EXHIBIT

1

## REAL ESTATE OPTION AGREEMENT

**THIS REAL ESTATE OPTION AGREEMENT** (the "Option") is made as of this _10th_ day of _September_, 20_14_ (the "Effective Date") by and between AUDIA GROUP, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY ("Buyer"), and WALKER COUNTY, GEORGIA and WALKER COUNTY DEVELOPMENT AUTHORITY (collectively, "Seller"). All capitalized terms not otherwise defined herein shall have the definitions set forth in that certain Agreement for Purchase and Sale of Property dated as of _9/10/14_, 2014 between Buyer and Seller (the "Agreement").

## WITNESSETH THAT:

WHEREAS, Buyer has agreed to purchase, and Seller has agreed to sell, the Property upon the terms and conditions set forth in the Agreement.

WHEREAS, contemporaneous with and as a condition of its agreement to purchase the Property, Buyer also wishes to obtain an option to purchase the Option Property, and Seller has agreed to provide to Buyer an option to purchase the Option Property, on the terms and conditions set forth in the Agreement and in this Option.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree as follows:

1.      Grant of Option.  In consideration of Buyer's purchase of the Property from Seller (the "Option Consideration"), Seller hereby grants to Buyer an exclusive option to purchase, upon the terms and conditions set forth in this Option, the Option Property, together with all improvements to be constructed by Seller pursuant to the terms of this Option and all easements, rights and privileges appurtenant thereto.

2.      Option Consideration and Option Purchase Price.   The purchase price for the Option Property is Ten and No/100s Dollars ($10.00) (the "Option Purchase Price"). The Option Purchase Price shall be paid by Buyer to Seller at the Option Closing in United States dollars, by wire transfer or other immediately funds.

3.      Exercise of Option.  This Option may be exercised by Buyer at any time on or before January 1, 2025 (the "Option Period") by delivery of written notice of such exercise to Seller in accordance with the requirements and terms of this Option, which notice shall specify a proposed Closing date which shall in no event be less than one hundred and twenty (120) days after the effective date of the notice unless otherwise agreed by Seller.  If not exercised by Buyer prior to the completion of the Option Period, upon expiration of the Option Period the Option will be deemed terminated and of no further force or effect.

4.     Conveyance. At the Option Closing, Seller shall convey good and marketable fee simple title to the Option Property to Buyer free and clear of all liens and encumbrances (including, but not limited to, any loans secured by the Option Property), subject only to the Permitted Title Exceptions. Seller shall remove any monetary liens against the Option Property at or before the Option Closing. Seller agrees not to further alter or encumber or convey in any way Seller's title to the Option Property after the date of this Option without Buyer's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.

5.     Documentation From Seller. Prior to the date hereof, Seller has delivered to Buyer all of the items regarding the Option Property then in its possession or control set forth in Section 7.2 of the Agreement. So long as this Option is in effect, to the extent that Seller shall receive or otherwise obtain possession or control of additional items regarding the Option Property described in Section 7.2 of the Agreement, or it shall receive updated or revised versions of any previously delivered items, Seller will promptly deliver to Buyer copies of such additional, updated or revised items. Furthermore, so long as this Option is in effect, Seller will provide to Buyer such additional documentation or information regarding the Option Property which Buyer may reasonably request.

6.     Buyer's Inspection Rights.. So long as this Option is in effect, Buyer and its agents, employees, representatives and independent contractors are and have been entitled to enter upon the Option Property for the purpose of making such surveys, soil tests, borings, percolation tests, inspections, examinations, and studies as Buyer deems necessary or desirable in its sole discretion regarding the Option Property. Buyer agrees to exercise such right in a manner that will not materially and adversely harm or damage the Option Property, or interfere with Seller's operations being conducted thereon. Buyer agrees to restore the Option Property to their condition prior to any such work immediately after conducting the same. Buyer hereby indemnifies and holds Seller harmless from and against any claims for injury or death to persons, damage to property or other losses, damages or claims, including, in each instance, reasonable attorneys' fees and litigation costs actually incurred, arising out of any action of any person or firm entering the Option Property on Buyer's behalf as aforesaid, which indemnity shall survive the Option Closing or any termination of this option; provided, however, this indemnity shall not apply to Buyer's mere discovery of any pre-existing condition (including, without limitation, any Hazardous Substances) at the Option Property. Buyer's obligation to restore the Option Property as provided in this Section 6 shall survive any termination of this Option.

7.     Survey. Seller has previously delivered to Buyer the Option Property Survey pursuant to Section 6 of the Agreement. In the event Buyer exercises the Option, upon Buyer's reasonable request, Seller shall, at its expense, within thirty (30) days have the Option Property Survey updated, which updated Option Property Survey will comply with ALTA/ASCM minimum standards (an ALTA survey). The legal description to the attached to the deed conveying the Option Property to Buyer shall be the legal description set forth in the most current Option Property Survey.

8.     Conditions Precedent for Buyer. In addition to other conditions set forth in this Option for Buyer's benefit, upon Buyer's exercise of the Option Buyer's obligation to purchase

2

the Option Property shall be subject to and contingent upon the following conditions precedent, any or all of which Buyer may waive by written notice only:

(a)     Adverse Conditions.  There shall be no material adverse change in the condition of or affecting the Option Property between the Effective Date and the Closing Date, including, but not limited to, (a) environmental contamination, (b) access, and (c) the availability, adequacy and cost of utilities;

(b)     Title Insurance.  The willingness of Title Insurer to issue, on the Closing Date, upon the sole condition of the payment of an amount no greater than its regularly scheduled premium and delivery of items required of Buyer, its standard ALTA form owner's policy of title insurance ("Title Policy"), insuring in the amount of at least $50,000,000 that title to the Option Property is vested of record in Buyer on the Closing Date, subject only to the Permitted Title Exceptions;

(c)     The Option Property Survey not disclosing any matters that are objectionable to Buyer in its sole discretion;

(d)     Representations and Warranties.  Seller's representations and warranties contained herein shall be true and correct as of the Effective Date and the Closing Date in all material respects.

(e)     Estoppel. Buyer shall have received an estoppel certificate from the appropriate Person with respect to any covenants, conditions, restrictions, or easements which affect the Option Property confirming (i) that the Option Property is not in default under any of such covenants, conditions, restrictions, or easements, (ii) that there are no past due amounts owed with respect to the Option Property, and (iii) addressing such other matters as Buyer may reasonably request.

(f)     Pad-Ready.  Seller shall have, at its expense, completed rendering the Option Property "pad-ready" by contractors approved by Buyer. As used herein, "pad-ready" means in a final condition upon which Buyer's contractors can commence construction of the current and future contemplated facilities on the Option Property, including without limitation (1) having the proposed facility locations (including all buildings and the trailer truck and automobile parking areas) as shown of the Buyer's site plan rough-graded and fine-graded, and meeting the soil compaction, soil composition, flatness and other specifications established by Buyer's general contractor or engineer; (2) proper storm water management facilities, including retention ponds, pellet separation systems, drainage connections (to be located within 5 feet of the proposed building location and the number of which to be determined by Buyer's general contractor), and loading dock drains, in place; (3) all required railway bed construction and ballasting for the railway service contemplated in Section 8(h) below completed and ready for installation of the contemplated rail spur, including rail track, switches and other equipment, (4) appropriate concrete foundation for truck docks to be located on the Option Property (if applicable); and (5) the topsoil scraped off and collected in an area determined by Buyer for subsequent use by Buyer's designated contractor in landscaping the Option Property.  In rendering the Option Property pad-ready, the contractor selected by Seller will consult with

3

12283091v6
27324-0001

Buyer and its general contractor and/or engineers to ensure the Option Property is prepared in a manner consistent with Buyer's construction plans. When Seller believes the Option Property is pad-ready, Seller will cause its engineer or contractor to certify to Buyer that the Option Property is pad-ready as defined herein. Buyer shall also have the right to inspect and test the Option Property, using such independent parties as it deems advisable, to confirm that it is pad-ready as defined herein. Seller will provide to Buyer update reports on a weekly basis, such reports to include pictures of the work completed and to be in a form mutually agreed upon by the parties. To the extent that, by agreement of the parties, Seller does not complete any portion of the foregoing work prior to the Closing, Seller shall remain obligated to complete such work (at its expense) post-Closing.

(g)  Water, Sewer, Electricity, Natural Gas, Etc.  The Option Property shall have access to applicable permanent and temporary water lines (for both Buyer consumption and fire suppression systems) sewer lines (sanitary and storm water), electricity, natural gas lines, and telecommunication lines as prescribed in Section 7.3.7 of the Agreement.

(h)  Railway Service. Buyer continuing to retain from Chattooga & Chickamauga Railway and such other railway company acceptable to Buyer, a signed commitment to install on the Option Property rail spurs, including track, switches and other equipment, necessary to provide to the Option Property adequate rail service in Buyer's opinion to support its business operations.

(i)  Inspections; Safety Precautions; Erosion Control .  So long as this Option is in force, Buyer shall be entitled to visit and inspect the Option Property and the pre-closing work to be performed by Seller, subject to Seller's established safety procedures. Seller will ensure that, in performing all of the various construction-related services required hereunder, all proper and legally–required erosion control and safety precautions are implemented, including proper barricading of all excavation and active construction sites. Seller shall also construct all temporary roadways necessary to complete the contemplated construction activities (both pre and post-closing), as well as to allow Buyer to inspect such work and the results thereof, and all required temporary walk-off, washout, and storage areas.

(j)  Failure of Condition(s) Precedent; Cancellation.  If any of the foregoing conditions precedent in this Section 8 are not satisfied or waived in writing by Buyer, Buyer shall elect, at its option, by notice to Seller, either to:  (1) terminate this Option, in which event the parties hereto shall have no further rights or obligations hereunder, except for those which expressly survive such termination; or (2) close without regard to the failure of such condition. If these conditions have not been satisfied within ninety (90) days after Buyer's delivery of notice of its intention to exercise the Option, within thirty (30) days thereafter, Buyer shall elect either option (a) or (b) by notice to Seller. If Buyer does not give any such notice to Seller, Buyer shall be deemed to have elected option (2).

9.  Representations and Warranties.  Seller hereby reaffirms, as of the Effective Date, the warranties and representations to Buyer regarding Seller and the Option Property set forth in Section 8 of the Agreement.  The warranties and representations reaffirmed in this Section 9 are true, correct and complete in all material respects, and shall be true correct and complete in all

4

12283091v6
27324-0001

material respects as of the Closing Date and shall survive the Option Closing for one (1) year and shall not be deemed merged into any instrument of conveyance delivered at the Option Closing, and shall inure to the benefit of and be enforceable by Buyer, its successors and assigns.

10.     Closing.

(a)     Time and Place.  Provided that all of the conditions set forth in this Option Agreement are theretofore fully satisfied or performed, the Option Closing shall be held at the office of Miller & Martin PLLC, at 10:00 a.m. local time, on a date selected by Buyer which shall be on or before the proposed Closing date specified by Buyer in the Option exercise notice provided by it pursuant to Section 3 above, unless the Option Closing Date is postponed pursuant to the express terms of this Option Agreement or as otherwise agreed by Seller and Buyer in writing.  If Buyer is not satisfied with the conditions precedent set forth in Section 8, Buyer may extend the Closing Date for up to sixty (60) days by giving written notice thereof to Seller. The parties agree to cooperate to close in escrow by mail if possible.

(b)  Closing Documents.   For and in consideration of, and as a condition precedent to Buyer's delivery to Seller of the Option Purchase Price, Seller shall obtain and deliver to Buyer at the Option Closing the following documents (all of which shall be duly executed and witnessed, which documents Buyer agrees to execute where required):

(1)   A limited warranty deed (the "Deed") conveying to Buyer all of Seller's right, title and interest in and to the Option Property, subject only to the Permitted Title Exceptions, in the form attached as Exhibit "E" to the Agreement and by this reference made a part hereof;

(2) A Certificate and Affidavit of Non-Foreign Status in the form attached as Exhibit "B" to the Agreement  and by this reference made a part hereof;

(3)   An affidavit of title in the form reasonably required by the Title Insurer in order to issue its extended coverage owner's policy of title insurance without exception for mechanic's, materialmen's or other statutory liens, for unrecorded easements, for other rights of parties in possession or for other matters that are unacceptable to Buyer;

(4)   Such evidence as Title Insurer shall reasonably require as to the authority of the parties acting on behalf of Seller to enter into this Option Agreement and to discharge the obligations of Seller pursuant hereto;

(5) A certificate of Seller, dated as of the Closing Date, reaffirming that all representations and warranties of Seller under this Option Agreement are true, correct and complete in all material respects as of the Option Closing Date which certificate shall survive the Option Closing for one (1) year.

(6)     A Closing Statement;

5

12283091v6
27324-0001

(7)    Such further instructions, documents and information as Buyer or Title Insurer may reasonably request to consummate the purchase and sale contemplated by this Option Agreement.

(8) An Affidavit of Seller's Residence in the form attached as Exhibit "C" to the Agreement and by this reference made a part hereof;

(9) A Seller's Affidavit Regarding Brokers in the form attached hereto as Exhibit "D" to the Agreement and by this reference made a part hereof; and

(10)   At Closing, Seller will also deliver to Buyer all licenses, permits, plans, specifications, maps, plats, surveys, books and records in Seller's possession or control relating to the Option Property or to the operation or use thereof.

(c)    Costs.  At the Closing, Seller and Buyer shall pay their own respective costs incurred with respect to the consummation of the purchase and sale of the Option Property as contemplated herein, including, without limitation, attorneys' fees.  Notwithstanding the foregoing, it is expressly agreed that Seller shall pay the cost of any and all transfer and/or documentary stamp taxes (if any) incident to the conveyance of title to the Option Property to Buyer.  Buyer shall pay the cost of recording the deed, any title insurance commitment or title insurance policy that Buyer elects to obtain, and any costs, fees or expenses relating to Buyer's investigation of the Option Property.

Section 10.  Environmental Indemnity.  If the Closing occurs, Seller shall indemnify and hold harmless Buyer from any and all claims, losses, Liabilities, damages, deficiencies, diminution in value, costs, and expenses, including reasonable attorneys' fees and the expenses of investigation and defense (whether or not involving third party claims) incurred or sustained by Buyer, directly or indirectly, as a result of, in connection with or arising out of  (i) any violation or alleged violation of any Hazardous Substance Law with respect to the Option Property occurring on or before the Closing Date. This Section 10 shall expressly survive the Closing hereunder.

Section 11.  Condemnation.

(a)  Condemnation.  Upon becoming aware of the same, Seller agrees to give Buyer immediate written notice of any actual or threatened taking in condemnation or by eminent domain (or a sale in lieu thereof).  Between the Effective Date and the Closing Date, any actual or threatened taking or condemnation for any public or quasi-public purpose or use by any competent authority in appropriate proceedings or by any right of eminent domain of all or any part of the Option Property which would, in Buyer's judgment,  adversely affect the Option Property or render either unsuitable for Buyer's purposes, shall, at Buyer's option, allow Buyer, by written notice to Seller,  to elect to terminate this Agreement.  If this Agreement is so terminated, the parties shall have no further rights or obligations hereunder, except for those which expressly survive any such termination. Notwithstanding the foregoing, between the

6

Effective Date and the Closing Date, Seller agrees not to institute any taking in condemnation or by eminent domain (or a sale in lieu thereof) related to the Option Property.

(b) Awards and Proceeds. If Buyer does not elect to terminate this Agreement following any notice of a threat of taking or taking by condemnation, as provided above, this Agreement shall remain in full force and effect and the conveyance of the Option Property contemplated herein, less any interest taken by eminent domain or condemnation, or sale in lieu thereof, shall be effected. At the Closing, Seller shall assign, transfer and set over to Buyer all of Seller's right, title and interest in and to any awards or payments for the actual value of the property lost or destroyed that have been or may thereafter be made for any such taking or sale in lieu thereof.

Section 12. Assignment. Buyer may assign any of Buyer's rights hereunder or any part thereof to an affiliate or subsidiary of Buyer or to an entity formed by Buyer for the purpose of taking title to the Option Property. Otherwise, Buyer may not assign Buyer's rights hereunder or any part hereof without the Seller's prior written consent shall not be unreasonably withheld, conditioned or delayed.

Section 13. Brokers. Buyer and Seller each warrant and represent to the other that they have not employed and will not employ, a real estate broker or agent in connection with the transaction contemplated hereby. Each party agrees to indemnify and hold the other harmless from any loss or cost suffered or incurred by it as a result of the other's representation herein being untrue. This Section 13 shall expressly survive the Closing hereunder.

Section 14. Notices. Wherever any notice or other communication is required or permitted hereunder, such notice or other communication shall be in writing and shall be delivered by hand, by nationally-recognized overnight express delivery service, by U. S. registered or certified mail, return receipt requested, postage prepaid, or by email, to the addresses set out below or at such other addresses as are specified by written notice delivered in accordance herewith:

BUYER:  
Audia Group LLC  
450 Racetrack Road  
Washington, Pennsylvania 15301  
Attention: A. Richard Violi, Esq.  
Phone No.: (724) 745-0588  
Email: violi@audiagroup.com

With a copy to:  
Miller & Martin PLLC  
1180 W. Peachtree Street NW  
Suite 2100  
Atlanta, Georgia 30309  
Attention: Charles A. Brake, Esq.  
Phone No.: (404) 962-6436  
Email: cbrake@millermartin.com

7

12283091v6  
27324-0001

SELLER:    *Walker County*
*P.O. Box 445*
*101 South Duke Street Lafayette, GA 30728*
Attention: *Bebe Heiskell*
Phone No.: *706-638-1437*
Email: *commissioner@walkerga.us*

With a copy to:    *Walker County Development Authority*
*P.O. Box 445*
*101 South Duke Street Lafayette, GA 30728*
Attention: *Larry Brooks*
Phone No.: *706-638-1437*
Email: *L.brooks@walkerga.us*

Any notice or other communication mailed as hereinabove provided shall be deemed effectively given (a) on the date of delivery, if delivered by hand; (b) on the date delivered if sent by overnight express delivery or if sent by U.S. mail; or (c) on the date of transmission, if sent by email. Such notices shall be deemed received (a) on the date of delivery, if delivered by hand or overnight express delivery service; (b) on the date indicated on the return receipt if mailed; or (c) on the date of transmission, if sent by email. If any notice mailed is properly addressed but returned because of a change of address for which no prior written notice was properly given, such notice shall be deemed to be effective notice and to be given on the date of mailing. If any notice is properly sent to an email address but returned because of a change of email address for which no prior written notice was properly given, such notice shall be deemed to be effective notice and to be given on the date the email was sent.

Section 15. Miscellaneous.

(a) Governing Law; Headings; Rules of Construction. This Agreement shall be construed and interpreted under the laws of Georgia. The titles of sections and subsections herein have been inserted as a matter of convenience of reference only and shall not control or affect the meaning or construction of any of the terms or provisions herein. All references herein to the singular shall include the plural, and vice versa. The parties agree that this Agreement is the result of negotiation by the parties, each of whom was represented by counsel, and thus, this Agreement shall not be construed against the maker thereof.

(b) No Waiver. Neither the failure of either party to exercise any power given such party hereunder or to insist upon strict compliance by the other party with its obligations hereunder, nor any custom or practice of the parties at variance with the terms hereof shall constitute a waiver of either party's right to demand exact compliance with the terms hereof.

(c) Entire Agreement. This Agreement and the documents incorporated herein by reference contain the entire agreement of the parties hereto with respect to the Option Property,

8

and no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein or incorporated herein by reference shall be of any force or effect.

(d)  Binding Effect.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective personal representatives, successors and assigns.

(e)  Amendments.  No amendment to this Agreement shall be binding on any of the parties hereto unless such amendment is in writing and is executed by the party against whom enforcement of such amendment is sought.

(f)  Possession.  Possession of the Option Property shall be granted by Seller to Buyer no later than the Closing Date, subject to the Permitted Title Exceptions.

(g)  Date for Performance.  If the time period by which any right, option or election provided under this Agreement must be exercised, or by which any act required hereunder must be performed, or by which the Closing must be held, expires on a day other than a Business Day, then such time period shall be automatically extended through the close of business on the next regularly scheduled Business Day.

(h)  Reserved

(i)  Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute but one and the same instrument. The parties agree to accept emailed copies of executed signature pages to this Agreement and to treat the same as originals. To the extent emailed copies of signature pages are used, upon request, the parties agree to exchange original signature pages promptly after the Effective Date.

(j)  Time of the Essence.  Time shall be of the essence of this Agreement and each and every term and condition hereof.

(k)  Severability.  This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations, and is intended, and shall for all purposes be deemed to be, a single, integrated document setting forth all of the agreements and understandings of the parties hereto, and superseding all prior negotiations, understandings and agreements of such parties.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall for any reason and to any extent be held to be invalid or unenforceable, then such term or provision shall be ignored, and to the maximum extent possible, this Agreement shall continue in full force and effect, but without giving effect to such term or provision.

(l)  Listings and Other Offers.  During the pendency of this Agreement, Seller shall not list the Option Property with any broker or otherwise solicit any offers to sell the Option Property or enter into any binding contracts or binding agreements regarding any disposition of the Option Property.

9

12283091v6
27324-0001

(m)    Attorney's Fees.    In the event a dispute arises between Buyer and Seller under this Agreement, the losing party shall pay the attorney's fees and court costs of the prevailing party.

IN WITNESS WHEREOF, each of the parties hereto has duly signed and sealed this Agreement, effective as of the day and year first above written.

SELLER:

WALKER COUNTY, GEORGIA

By: _Bebe Heiskell_
Name: _Bebe Heiskell_
Title: _Sole Commissioner_

Attest: _Pamela_
Name: _Pamela D Townsend_
Title: _Notary Public_

[Corporate Seal]

WALKER COUNTY DEVELOPMENT AUTHORITY

By: _Alvin M Hutchison_
Name: _Alvin M Hutchison Jr_
Title: _Chairman_

Attest: _Pamela_
Name: _Pamela D_
Title: _Notary Public_

10

12283091v6
27324-0001

[Corporate Seal]

11

12283091v6
27324-0001

BUYER:

AUDIA GROUP, LLC

By:_____
Name: RICHARD V. OL.
Title: VICE PRESIDENT & GENERAL COUNSEL

Attest:_____
Name: JAMES TODD GUMMERSBACL
Title: DIRECTOR

[Corporate Seal]

12

12283091v6
27324-0001