**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| **AUDIA GROUP, LLC,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action File No.** |
| | ) | **4:26-cv-00072-WMR** |
| **WALKER COUNTY and** | ) | |
| **WALKER COUNTY DEVELOPMENT** | ) | |
| **AUTHORITY,** | ) | |
| | ) | |
| **Defendants/Counter-Plaintiffs.** | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY**

Defendants/Counter-Plaintiffs Walker County and the Walker County Development Authority (collectively, "Defendants") file this Reply to Plaintiff's Response to Defendants' Motion to Stay Discovery. Defendants moved to stay discovery based on the pendency of a Motion for Judgment on the Pleadings ("MJOP") [Doc. 17]. In that MJOP, Defendants assert, in part, an entitlement to sovereign immunity predicated upon the Alleged 2014 Option Agreement being ultra vires and void. [Doc. 17-1, at 7-8]. Because the viability of the Alleged 2014 Option Agreement is the only basis upon which Audia can overcome Defendants' sovereign immunity (GA CONST Art. 1, § 2, ¶ IX(c) – waiving sovereign immunity

for actions *ex contractu*), upon the Agreement being declared a nullity, there is no immunity waiver.

Georgia law supplies the underlying authority regarding sovereign immunity waivers. Sovereign immunity is a threshold issue that must be resolved before the merits. Guy v. Housing Authority of the City of Augusta, 378 Ga. App. 499, 501 (2026). Although state law does not define this Court's subject matter jurisdiction, Green v. Graham, 906 F.3d 955, 964 (11th Cir. 2018), the Eleventh Circuit recognizes that Georgia sovereign immunity is immunity from suit, not merely a defense to liability. Griesel v. Hamlin, 963 F.2d 338, 340 (11th Cir. 1992). The immunity's value is, therefore, greatly undermined if Defendants are required to participate in discovery. See Howe v. City of Enterprise, 861 F.3d 1300, 1302 (11th Cir. 2017) (in requiring the defendants to further defend from liability while the immunity issue remained pending, the district court had effectively denied immunity).

Audia's response in opposition to staying discovery rests on two central propositions: (i) that the Scheduling Order implicitly rejected a stay, and that (ii) Audia needs merits discovery to oppose a motion directed to the pleadings. Neither contention is accurate, nor does either address Defendants' threshold sovereign immunity entitlement. The Parties' Joint Preliminary Report ("Report") expressly (and repeatedly) contemplated a forthcoming Motion for Judgment on the Pleadings

("MJOP") and associated stay request. [Doc. 10 at 17]. Such future filings were emphasized because of Defendants' immunity entitlements. Defendants maintain that the entitlement has not been and cannot be overcome because the Alleged 2014 Option Agreement was void ab initio.

The July 8, 2026, Joint Preliminary Report and Discovery Plan stated that "*the parties respectfully request a 6-month discovery track. Additionally, Defendants* ***will be filing a Motion for Judgment on the Pleadings asserting the defense of sovereign immunity based upon Defendants'*** *contention that the 2014 Option Agreement, as construed by Plaintiff, is void. Upon the filing of that MJOP, the Defendants will ask the Court to stay discovery pending disposition of that Motion*." [Doc. 10, p. 14] (emphasis supplied). Moreover, the parties' requested six-month discovery track was 'subject to' the soon-to-be-filed MJOP: "*[t]he Parties agree that the case should be assigned to a six-month discovery period, subject to Defendant soon-to-be-filed MJOP and corresponding request to stay discovery*." [Doc. 10, p. 17].

On July 13, 2026, the Court approved the Joint Preliminary Report and Scheduling Order [Doc. 13]. The Scheduling Order provides that "[t]he Court will entertain a Motion to Stay Discovery following the filing of Defendants' Motion for Judgment on the Pleadings." [Doc. 10 at 23; Doc. 13]. Defendants filed the motion contemplated by that Order. Defendants/Counter-Plaintiffs' MJOP was filed August

6, 2026. [Doc. 17]. Defendants/Counter-Plaintiffs' Motion to Stay Discovery was filed August 7, 2026. [Doc. 18]. The Court's willingness to "entertain" a stay is the opposite of this Court preemptively denying one.

Audia filed a Response [in Opposition] to Defendants' Motion to Stay on August 19, 2026. [Doc. 21].

Events have now transpired, demonstrating why Defendants' requested stay is important. On August 25, Audia served Defendants jointly with thirteen interrogatories and thirty-three requests for production. (Audia Group's Interrogatories and Requests for Production to Defendants, Attached hereto as Ex. A). The same day, Audia transmitted a 203-page notice announcing nineteen (19) document subpoenas to eighteen individuals and one environmental consultant, all demanding compliance by September 11. (Audia Group, LLC's Notice of Intent to Serve Subpoenas, Attached hereto as Ex. B). Fourteen (14) of the subpoenas are directed to members or executive leadership of the County Board of Commissioners and Development Authority (the Defendants), as well as former County Board Chair Shannon Whitfield and Larry Brooks, the former Executive Director of the Development Authority.

Audia has subpoenaed the entire membership of the Walker County Water & Sewerage Authority board, even though that entity is not a party to this litigation. Audia also issued an environmental subpoena to Marion Environmental, Inc. These

five (5) subpoenas are squarely focused on an environmental testing issue that is not referenced in the pleadings or the MJOP. See Ex. B. Collectively, Audia's subpoenas contain 309 document demands directed to 18 individuals, many at their residences, and one environmental contractor, with production demanded by September 11, 2026.

Audia's requests seek decades of governmental documents, unrelated economic development transactions, environmental testing records, private electronic communications, and virtually every document concerning the parties' claims and defenses. Id. Unless the Court preserves the status quo, Defendants and multiple nonparties will incur substantial and unnecessary burdens that the pending motion to stay seeks to avoid. The Court should grant the limited stay, preserve the existing discovery period by tolling it, and resolve the MJOP before the parties and nineteen nonparties incur unnecessary costs. Moreover, absent a stay, Defendants must participate in litigation before the Court resolves their threshold immunity defenses, thereby undermining them. Green v. Graham, 906 F.3d 955 (11th Cir. 2018) ("denials of sovereign immunity are immediately appealable only because sovereign immunity includes 'an immunity from suit,' the 'value' of which "is for the most part lost as litigation proceeds past motion practice.")

Because the subpoenas command compliance by September 11, Defendants respectfully request prompt consideration.

## ARGUMENT AND CITATION OF AUTHORITY

### 1. THE SCHEDULING ORDER EXPRESSLY CONTEMPLATED A STAY MOTION.

Audia states that the Court knew Defendants intended to seek a stay when they entered the Scheduling Order. Resp. 2, 5. But the same Joint Preliminary Report that disclosed the anticipated MJOP also declared that the requested six-month track was "subject to" the MJOP and the "corresponding request to stay discovery." [Doc. 10 at 14, 17]. It further stated that the Court would entertain a stay motion after the MJOP was filed. Id. at 23. The Court approved the report and set an outside discovery deadline. [Doc. 13 at 1]. Audia's contention that the Court's willingness to "entertain" a motion to stay amounted to its preemptive denial is, respectfully, illogical.

The Scheduling Order and a stay can be easily harmonized. The Scheduling Order fixes January 5, 2027, as the current outside deadline and cautions against an open-ended extension. [Doc. 13 at 1–2 & n.1]. Defendants do not seek an open-ended stay or additional discovery time. Although tolling would adjust the deadline, it would preserve the originally-granted six months of discovery. This request honors the parties' reservation and allows the Court to determine whether discovery is needed at all and, if so, what remains.

**2. THE MJOP PRESENTS THRESHOLD LEGAL QUESTIONS THAT SHOULD BE DECIDED BEFORE DISCOVERY.**

A district court has broad discretion over the timing and sequence of discovery. Fed. R. Civ. P. 26(d); Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002). That discretion is especially important where a facial legal challenge may eliminate or narrow discovery. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense . . . should . . . be resolved before discovery begins."); Patterson v. U.S. Postal Serv., 901 F.2d 927, 929 (11th Cir. 1990). Defendants seek the situational exercise of discretion that Chudasama contemplates.

Audia's cases in opposition to the stay do not address the implicated immunity issues. Morton[1] and Frankenmuth[2] applied the good cause standard in private litigation; Paulino[3] rejected a stay based solely on the pendency of a potentially dispositive motion; and Trackside[4] addressed Rule 12(d) conversion rather than a motion to stay discovery. Resp. 4-5, 8. None of those authorities involved a government defendant asserting sovereign immunity. In Howe v. City of Enterprise, 861 F.3d 1300, 1302 (11th Cir. 2017), by contrast, the Eleventh Circuit vacated an order requiring defendants who had asserted qualified and state law immunities to

---

[1] No. 1:20-CV-3211-TWT-JKL, 2021 WL 4815899 (N.D. Ga. Aug. 19, 2021)
[2] No. 1:19-CV-091 (LAG), 2019 WL 9852792 (M.D. Ga. Aug. 19, 2019)
[3] No. 23-24172-CIV, 2024 WL 6967217 (S.D. Fla. May 10, 2024)
[4] No. 1:09-CV-0063-BBM, 2009 WL 10669354 (N.D. Ga. Sept. 30, 2009)

undertake Rule 26(f) obligations before their immunity defenses were resolved.

> "…we reasoned that by requiring the defendants to further defend from liability while the immunity issue remained pending, the district court had effectively denied immunity, which provides "an entitlement not to stand trial or face the other burdens of litigation."

Howe, 861 F.3d at 1302 (citing Bouchard Transp. Co. v. Fla. Dep't of Env't Prot., 91 F.3d 1445, 1448 (11th Cir. 1996)). The pending MJOP presents precisely such a threshold waiver question: under Waller, *infra*, the Court must determine from Audia's allegations whether Audia has plausibly alleged a valid written contract waiving Defendants' immunity.

**A. The MJOP is directed solely at the pleadings.**

Defendants' MJOP accepts Audia's well-pleaded allegations for purposes of Rule 12(c) and asks whether the written transaction documents create an enforceable obligation in Audia's favor against either Defendant. [Doc. 17-1 at 5–24]. The issues raised include whether the County could lawfully incur the asserted future financial pad-ready obligation; whether the County could undertake a private property sale in contravention of law; whether the County/Authority transaction may be reshaped as an Authority-only agreement; whether the alleged option survived assignment and closing by G3 Holdings, LLC ("G3"); and whether G3 is a required party. Those are questions implicating contract construction, statutory requirements, and the legal effect of documents attached to pleadings.

Audia argues that the stay should not apply to the Authority because the

Authority is distinct from the County – and legal restrictions on County action do not apply to the Authority. Audia's recitation of the Defendants' position (and the law) is incomplete. Audia mischaracterizes the Authority's general capacity to enter contracts as evidence that the *subject* agreement is valid. The 2014 Option Agreement involves a consolidated Seller, a single option, one consideration, and one consolidated package of County/Authority performance. If the County's required participation was unlawful, the Court cannot sever the County and rewrite the contract to impose the entire bargain upon the Authority. That is a legal question to be resolved from the pleadings. Discovery regarding what Authority officials may have believed or why performance was declined – does not inform the legal issues for resolution. Evidence about what public officials intended, what changed in 2023, or what incentives Defendants used in other transactions cannot enlarge Authority powers, redraft the 2014 Option Agreement, or create a different contract. Those topics *may* matter if a claim survives – but not at the pleading stage.

**B. Audia's Rule 12(d) argument does not justify discovery.**

Audia argues that discovery should proceed because the Court might consider material outside the pleadings and convert the MJOP to summary judgment. Resp. 8-9. That argument reverses the appropriate order for resolving immunity defenses. Immunity defenses should be resolved first. Both Defendants are protected by sovereign immunity unless Audia has plausibly alleged a valid written contract.

Waller v. Board of Regents of the University System of Georgia, No. 24-13307, slip op. at 11 (11th Cir. Aug. 10, 2026). That immunity protects governmental defendants from the burdens of litigation. Howe v. City of Enterprise, 861 F.3d 1300, 1302–03 (11th Cir. 2017). Audia's examples of so-called extrinsic facts are not persuasive. Audia mainly identifies two: (i) the County's historical form of government and (ii) Audia's lack of knowledge of voter assent regarding the 2014 Option Agreement. As to the first point, the 'form of government' issue (i.e., between 2014 and 2025 Walker County converted from a sole commissioner to a five-member board) is irrelevant. The powers of a county governing authority, whether wielded by one, three, or five members, are fixed by law and a change in the form of government has no legal impact on such powers.

As to Audia's second point regarding uncertainty about whether a referendum occurred, Audia bears the burden of pleading the existence of a valid contract. Why? Because a valid contract is required to waive sovereign immunity. As Audia appears unclear whether a referendum occurred to approve the 2014 Option Agreement – that uncertainty undermines Audia's suggestion that sovereign immunity has been waived. In Waller, No. 24-13307, slip op. at 11 (11th Cir. Aug. 10, 2026), the Eleventh Circuit explained that "the question at this stage is whether [the plaintiff] has plausibly alleged that he and the Board entered a 'written contract' that waived sovereign immunity within the meaning of Art. I, § II, ¶ IX(c) of the Georgia

Constitution." Audia does not allege that the 2014 Option Agreement received voter approval; instead, it professes uncertainty. If, as Defendants contend, the Agreement created new debt, voter assent was a requirement and, correspondingly, was necessary to create a valid contract. Audia's professed lack of knowledge concerning an indispensable element of the very contract it seeks to enforce bears directly on whether Audia has plausibly alleged a valid contract.

### 3. AUDIA'S AUGUST 25 DISCOVERY CONFIRMS THAT THE BURDEN IS REAL.

When Defendants filed the stay motion, they explained that discovery into the 2014 transaction, alleged site development obligations, and damages would be costly and potentially unnecessary. [Doc. 18 at 4]. Audia's response called that concern insufficiently concrete. Audia's August 25 discovery requests remove any doubt. Audia served forty-six party requests and announced nineteen nonparty subpoenas in one day. Fourteen individual subpoenas contain the same twenty-one document demands, with the other five containing three (3) requests. They seek, among other things: every communication and document concerning economic incentives and bonds from 2010 forward; all agreements regarding a separate Pilgrim's Pride transaction; all option agreements; all documents concerning the alleged 2014 option and pad-ready work; and all communications and documents concerning this lawsuit and every allegation, claim, or defense. Ex. B. The requests use sweeping

definitions, demand ESI, and duplicate discovery served directly on the Defendants.

Audia's approach imposes burdens on nonparties and on Defendants. Current and former officials may possess governmental records, privileged communications, or work product that require carefully curated production. Requests for all documents "concerning the Litigation" or its claims and defenses create privilege risks. Duplicating the same requests across fourteen individuals multiplies collection, review, and production costs before the Court has determined whether any merits claim survives.

The environmental requests magnify the concern. Audia's Amended Complaint pleads breach of contract, unjust enrichment, and promissory estoppel arising from the option transaction. [Doc. 9]. It does not plead retaliation, selective treatment, or an environmental claim. Audia's response raises a suspected retaliation theory based on a blog post and says it wishes to "explore" the issue. Resp. 7. Rule 26(b)(1) permits discovery "relevant to any party's claim or defense and proportional to the needs of the case;" it does not authorize inquiry into an unpleaded retaliation theory.

The Rule 26(f) plan reinforces the need for control. The parties agreed to confer in good faith about reasonable ESI custodians, date ranges, search terms, and other limits, and to request a discovery conference if material ESI disagreements arose. [Doc. 10 at 18-19]. Audia's recent volume of discovery is difficult to reconcile

with that plan.

**4. A LIMITED STAY CAUSES NO PREJUDICE AND PRESERVES THE COURT'S OPTIONS.**

Defendants' preservation obligations continue during any stay and Defendants have not asked to delay briefing or decision on the MJOP. If claims survive, the Court can restore the unused discovery period and permit discovery tailored to the remaining issues. The requested stay therefore protects all parties. By contrast, denying a stay ensures that multiple entities and individuals will incur significant expense and the benefit of Defendants' sovereign immunity will be lost. For these reasons, Defendants respectfully request that the Court grant their Motion to Stay Discovery [Doc. 18], stay discovery and corresponding deadlines until thirty days after resolution of the Motion for Judgment on the Pleadings [Doc. 17], toll the existing discovery period during the stay, and consider the requested stay expeditiously in light of Audia's September 11 subpoena compliance date.

**CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), the undersigned certifies that this brief has been prepared in accordance with LR 5.1 using Times New Roman 14-point font.

This 28th day of August 2026.

**JARRARD & DAVIS, LLP**

*/s/ Ken E. Jarrard*
Ken E. Jarrard
Georgia Bar No. 389550
Jeffrey M. Strickland
Georgia Bar No. 585543

222 Webb Street
Cumming, Georgia 30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)
kjarrard@jarrard-davis.com
jstrickland@jarrard-davis.com

*Attorneys for Defendants Walker County, Georgia and Walker County Development Authority*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY** with the Clerk of Court using the CM/ECF system, which will automatically send notice of electronic filing to all counsel of record.

This 28th day of August 2026.

**JARRARD & DAVIS, LLP**

*/s/ Ken E. Jarrard*
Ken E. Jarrard
Georgia Bar No. 389550
Jeffrey M. Strickland
Georgia Bar No. 585543

222 Webb Street
Cumming, Georgia 30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)
kjarrard@jarrard-davis.com
jstrickland@jarrard-davis.com

*Attorneys for Defendants Walker County, Georgia and Walker County Development Authority*